THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NELSON PADILLA, Defendant-Appellant.

First District (5th Division)   No. 86—1125

Opinion filed August 5, 1988.—Rehearing denied September 9, 1988.

Randolph N. Stone, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Susan J. Crane, and Ina C. Kantor, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SULLIVAN delivered the opinion of the court:

Following a bench trial, defendant was found guilty of aggravated battery and was sentenced to serve a term of four years. On appeal he contends that he was prejudiced by the State's failure to disclose in pretrial discovery the name of an investigating officer who testified at trial, by the admission into evidence of certain irrelevant hearsay testimony and by evidence of his prior criminal conduct.

Ricardo Rosario and Modesto Reyes testified that shortly before 9 p.m. on January 25, 1985, they left the McDonald's restaurant located at Milwaukee and Western with their friend, Reynaldo Colon, and walked north on Western to Dickens, where they turned right. As they were walking east on Dickens on the south side of the street, they saw a small blue Datsun sports car slowly emerge from an alley on the opposite side of the street, immediately west of Oakley. Although it was dark and the car's headlights were on, they recognized the passenger, Nelson Padilla, who had attended high school with them and frequented their neighborhood. Neither witness, however, could identify or describe the driver.

Rosario and Reyes testified further that the car stopped and the headlights were turned off. Defendant then stepped out of the vehicle, walked around the passenger side door, pulled a gun from his waistband and pointed it at them. Defendant was standing directly under a streetlight which was 15 to 20 feet from them. Rosario immediately began to run toward Oakley, while Reyes "froze" momentarily. Both witnesses heard a gunshot. Rosario cried out that he had been shot, felt a pain in his back and fell down on the sidewalk. Reyes saw defendant jump back into the sports car, which then drove in reverse through the alley. Reyes and Colon helped Rosario walk to a nearby hot dog stand where they called the police.

Rosario and Reyes stated that they told the police that Rosario had been shot by defendant, Nelson Padilla, that Padilla's nickname was "Baby Face Nelson" and that he had been riding in a small blue Datsun sports car. Defendant belonged to the "Latin Lovers" street gang; Reyes and Colon were members of the "Spanish Lords," a rival gang. Rosario was not affiliated with any gang.

Officer Ribado responded to a call of a man shot at Sammy's Red Hots at 2345 West Armitage. Upon arriving at that location, he found Rosario, who had been shot in the back, Reyes and Colon, and inter-

viewed all three of them. Over defense counsel's objection, Ribado, who was not listed as a potential witness in pretrial discovery and was not named in any police reports, was allowed to testify that Rosario, Reyes and Colon told him that the offenders were two white male Hispanics, approximately 18 or 19 years old; that they were riding in a blue-colored Datsun; that the gunman's name was Nelson Padilla; that Padilla's nickname was "Baby Face Nelson"; that he was 5 feet, 8 inches tall and weighed 125 pounds; that he was a member of the "Latin Lovers" street gang; and that he had pointed a blue-steel handgun at Rosario. Ribado did not know which of the three witnesses described the weapon.

Ribado did not take any notes of his interview with the witnesses and did not prepare or sign any reports concerning the shooting. The parties stipulated that there was no description of the second offender in the police report prepared by Officer Bosnyak, who spoke with the officers who had interviewed the witnesses. A flash message based on the information Ribado received was then transmitted on the police radio.

Officer Manuel de la Torre monitored the message and arrested defendant and another man at 9:15 p.m. on the night of the shooting as defendant was parking his car a few blocks from the scene of the crime. De la Torre searched the vehicle and found a zipgun in the glove compartment.

At the preliminary hearing, Rosario described the weapon used in the shooting as a zipgun, which was a small "pen-[like]" gun approximately six inches in length. Rosario had seen the zipgun in defendant's possession on several previous occasions. The parties stipulated, however, that the bullet removed from Rosario's back could not have been fired from a zipgun and had not been fired from the gun recovered from defendant's car. At trial, Rosario stated that he did not know whether the weapon was a zipgun; Reyes testified that defendant had used a revolver but he admitted that he had not described the weapon to the police following the shooting.

Rosario and Reyes testified that outside the courtroom at his preliminary hearing on February 13, 1985, defendant threatened Colon, stating, "It was you I wanted, punk, and if you testify I am going to get my boys after you." Two defense witnesses, Donald Hutchens, an executive director of the Chicago Boys' Club, and Millie De Roeck, the assistant principal of Roberto Clemente High School, who accompanied defendant to the preliminary hearing, denied that any such threat was made. According to Hutchens and De Roeck, Rosario, Reyes, Colon and a fourth youth were making "gang gestures" at

defendant. Rosario and Reyes, however, testified that defendant was by himself when he approached Colon in the hallway outside of the courtroom and threatened him. Rosario and Colon signed complaints charging defendant with intimidation and he was rearrested.

Defendant presented an alibi defense through the testimony of his friend, Pedro Hernandez, and his mother, Estelle Hernandez. Donald Hutchens and Millie De Roeck testified as character witnesses.

OPINION

■ Defendant initially contends that he was prejudiced by the State's failure to disclose Officer Ribado's name in pretrial discovery. Although we believe that Ribado's name should have been disclosed, it does not appear to us that defendant was prejudiced by his testimony.

Ribado interviewed Ricardo Rosario, Modesto Reyes and Reynaldo Colon a few minutes after Rosario was shot. The witnesses told Ribado that the offenders were two white male Hispanics, approximately 18 or 19 years old; that they were riding in a blue-colored Datsun; that the gunman's name was Nelson Padilla; that Padilla's nickname was "Baby Face Nelson"; that he was 5 feet, 8 inches tall and weighed 125 pounds; that he was a member of the "Latin Lovers" street gang; and that he had pointed a blue-steel handgun at Rosario.

We observe that most of Ribado's testimony, including the identification of defendant as the gunman, was merely cumulative of what Rosario and Reyes said that they had told the police after the shooting. Their testimony, which was corroborated by Officer de la Torre's monitoring of the radio flash message, was admitted into evidence without objection.

Although there was no evidence in the record that either Rosario or Reyes had told the police that defendant used a blue-steel handgun, the trial court did not appear to place any weight on Ribado's testimony that one of the witnesses did provide such a description. The essential issue in this case, as the court stated, was the identification of the assailant, not any discrepancies in the description of the weapon. As to that issue, we note that Rosario and Reyes knew defendant from high school and the neighborhood, and that they were able to view him both before and after he got out of the sports car in the alley. In our judgment, the nondisclosure of Ribado's name in pretrial discovery was harmless error. See *People v. Greer* (1980), 79 Ill. 2d 103, 120, 402 N.E.2d 203.

Defendant next contends that he was prejudiced by the admission into evidence of certain irrelevant hearsay testimony. When asked at

trial to explain Reynaldo Colon's whereabouts, Ricardo Rosario answered, "He was murdered." Defense counsel objected to this answer and the court, without ruling on the objection, inquired of the witness, "He [Colon] is deceased?" Rosario said, "Yeah," and, in response to further questioning by the prosecutor, he was allowed to state over defense objection that Colon died in April 1985. Reyes testified without objection that at the time of defendant's trial, Colon was deceased.

Defendant submits that the testimony that Colon had been murdered and that he was deceased was irrelevant and highly prejudicial hearsay.

■ In our judgment, it was proper for the State to explain the absence from trial of one of three eyewitnesses to the shooting. Otherwise, the court may have drawn negative inferences from Reynaldo Colon's failure to testify. Under these circumstances, it was not objectionable hearsay for witnesses who knew that Colon was deceased to relate the fact of his death. Moreover, we note that defense counsel did not object to the testimony of either witness that Colon was deceased.

Notwithstanding the foregoing, we agree with defendant that in light of the State's evidence that defendant had threatened Colon at his preliminary hearing, and in the absence of any competent evidence that defendant had killed Colon, Rosario's testimony that Colon had been murdered was irrelevant hearsay and potentially very prejudicial. We note, however, that this was a bench trial. Where, as here, a case is tried without a jury it is presumed that the court considered only competent evidence. (*People v. Barbour* (1982), 106 Ill. App. 3d 993, 1001, 436 N.E.2d 667.) That presumption can be overcome where the record affirmatively shows the contrary. (106 Ill. App. 3d at 1001.) In the case at bar, nothing in the record suggests that the court considered Rosario's testimony that Colon had been murdered in determining defendant's guilt. Indeed, the court's acquittal of defendant on the more serious charge of attempted murder indicates otherwise.

Finally, defendant contends that he was prejudiced by evidence of his prior criminal conduct. We disagree.

■ The State attempted to impeach defendant's two character witnesses with his prior adjudication of delinquency (on a charge of aggravated battery) in a juvenile proceeding and his alleged habit of carrying a zipgun. The trial court sustained defense counsel's objections to both lines of questioning. The court, however, did permit the State to introduce into evidence a certified copy of defendant's adjudication of delinquency to rebut the testimony of his character wit-

nesses that he had a reputation for being a peaceful person. Counsel objected to admission of the document, but not on the grounds raised here. Accordingly, the present objection, *i.e.*, that the reputation of a person cannot be impeached by proof of particular acts, has been waived. (See *People v. Washington* (1962), 23 Ill. 2d 546, 548, 179 N.E.2d 635.) In any event, we find nothing in the record that indicates that the court was influenced by this evidence.

■■ Over defense objection, Officer de la Torre was allowed to testify that he had known defendant in the course of his duties for six years. De la Torre knew that the defendant's nickname was "Baby Face Nelson." This testimony was apparently elicited to explain why the officer arrested defendant after he monitored the flash message regarding the shooting. We do not believe that it necessarily implied that de la Torre knew defendant because of any previous criminal activity. See *People v. Doll* (1984), 126 Ill. App. 3d 495, 505, 467 N.E.2d 335.

We have reviewed the record in light of defendant's allegations of error and conclude that any error that may have occurred was harmless beyond a reasonable doubt. The evidence of defendant's guilt was strong and included the testimony of two eyewitnesses who knew defendant and had an adequate opportunity to observe him at the time of the shooting. Except for the description of the weapon, their testimony was substantially unimpeached. Defendant's threat of Reynaldo Colon reflected a consciousness of guilt and provided additional evidence in support of the court's finding.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ, P.J., and MURRAY, J., concur.